IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00114-MR

| | |
|---|---|
| SELENA KEMPTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI,[1] Commissioner )<br>of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I. BACKGROUND

The Plaintiff initially applied for a period of disability and disability insurance benefits on October 18, 2016, alleging an onset date of June 9, 2014. [Transcript ("T.") at 101]. The Plaintiff's claim was denied initially and on reconsideration. [T. at 156, 234]. Upon the Plaintiff's request, a hearing was held on October 11, 2018, before an Administrative Law Judge ("ALJ").

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is therefore substituted in this action as the named defendant. See Fed. R. Civ. P. 25(d).

[Id. at 101]. On January 29, 2019, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 98-115].

On March 13, 2020, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks and citation omitted). "It consists of more than a mere

scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and citation omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks, alteration, and citation omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks and citation omitted). And, to enable substantial evidence review, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (citation omitted).

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotation marks and citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and

explanation." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines a "disability" entitling a claimant to benefits as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step sequential evaluation process to determine whether a claimant is disabled. Arakas v. Comm'r of Soc. Sec. Admin., 983 F.3d 83, 90 (4th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant's application is denied regardless of the claimant's medical condition, age, education, or work experience. Id. §§ 404.1520(b), 416.920(b). If not, the

4

case progresses to step two, where the claimant must show a severe impairment. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not show any physical or mental deficiencies—or a combination thereof—which significantly limit the claimant's ability to perform work activities, then no severe impairment is established, and the claimant is not disabled. Id. §§ 404.1520(c), 416.920(c).

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Subpart P, Appendix 1. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), 404.1525, 404.1526. If so, the claimant is automatically deemed disabled regardless of age, education, or work experience. Id. §§ 404.1520(d), 416.920(d). If a claimant's impairment does not meet or equal a Listing, the ALJ must assess the claimant's residual functional capacity ("RFC"). Id. §§ 404.1520(e), 416.920(e). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

5

Case 1:20-cv-00114-MR   Document 17   Filed 11/10/21   Page 5 of 19

At step four, the claimant must show that she cannot perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then she is not disabled. Id. §§ 404.1520(f), 416.920(f). Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. Monroe, 826 F.3d at 180.

At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that "exists in significant numbers in the national economy." Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citations omitted). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled, and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 9, 2014. [T. at 104]. The ALJ also found that the Plaintiff meets the insured status requirements of the Act through December 31, 2021. [Id.]. At step two, the

6

Case 1:20-cv-00114-MR Document 17 Filed 11/10/21 Page 6 of 19

ALJ found that the Plaintiff has the following severe impairments: "degenerative disk disease of the cervical spine, degenerative joint disease of the lumbar spine, asthma, right rotator cuff tear, polyneuropathy, [and] adjustment disorder with mixed anxiety and depressed mood." [Id.].

At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 104-06]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, had the RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except never crawl or climb a ladder/rope/scaffold; occasional balancing, stooping, kneeling, crouching, and climbing a ramp or stairs; avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery and respiratory irritants such as dust, fumes, gases, etc.; can perform simple, routine tasks for two hour blocks of time with normal rest breaks during an eight hour work day.

[Id. at 106]. At step four, the ALJ identified the Plaintiff's past relevant work as a certified nursing assistant. [Id. at 113]. The ALJ found that the Plaintiff is "unable to perform any past relevant work." [Id.].

At step five, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, there are other jobs existing in significant numbers in the national economy that the Plaintiff is capable of performing including: egg processor, weight tester, and document preparer.

7

[Id. at 114]. The ALJ therefore concluded that the Plaintiff was not "disabled," as defined by the Act, from June 9, 2014, the alleged onset date, through January 29, 2019, the date of the decision. [Id. at 115].

## V. DISCUSSION[2]

### A. RFC Determination

As one of her assignments of error, the Plaintiff argues, *inter alia*, that the RFC is unsupported by substantial evidence. [Doc. 13 at 7].

An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34,478. "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations (the "Regulations") require an in-depth review and analysis of the plaintiff's mental health history. The Regulations set forth a mechanism for this review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

8

mental RFC. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders [L]istings." SSR 96-8p, 61 Fed. Reg. at 34,447. Paragraph B of the Listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The paragraph B criteria include restrictions in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.[3] Id. The ALJ uses the special technique to "evaluate the severity of mental impairments . . . when Part A of the Listing of Impairments is used." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The special technique is performed as follows:

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically

---

[3] The paragraph B criteria were recently amended. For claims filed on or after January 17, 2017, the new paragraph B criteria include: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (as amended). In this case, the Plaintiff filed her application for disability insurance benefits before the amendment. [See T. at 101]. But the ALJ applied the new paragraph B criteria before reaching his decision on January 29, 2019. [See id. at 104-06, 115].

9

> determinable mental impairment(s) . . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

Id. §§ 404.1520a(b)(1), 416.920a(b)(1). Thus, "[t]he regulation specifically provides that the ALJ must document all of the special technique's steps." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520a(e)(4)).

In addition to following the special technique, an ALJ must formulate the RFC in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p, 61 Fed. Reg. at 34,477.

Here, the ALJ failed to conduct a function-by-function analysis of the Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 104-13]. At step three, the ALJ determined that the Plaintiff's mental impairments did not meet or medically equal the paragraph B criteria included in Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). [Id. at 105]. The ALJ based this conclusion on findings regarding the Plaintiff's limitations with understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. [Id.]. Nonetheless, the ALJ found that the Plaintiff has moderate limitations in understanding, remembering, or applying information, and also has moderate limitations in concentrating, persisting, or maintaining pace. [Id.]. These findings indicate that there are limitations on the Plaintiff's ability to carry out some of the areas of mental functioning listed in paragraph B. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functioning capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of

11

> limitation I have found in the "paragraph B" mental functional analysis.

[Id. at 106].

In formulating the Plaintiff's RFC, however, the ALJ failed to explain whether the Plaintiff's moderate limitations translated to any actual functional limitations. It appears the ALJ sought to account for the Plaintiff's moderate limitations by stating, in the RFC, that the Plaintiff: "can perform simple, routine tasks for two hour blocks of time with normal rest breaks during an eight hour work day." [Id.]. While an ALJ need not "always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC," an ALJ must explain why a mental limitation to simple, routine tasks accounts for a claimant's moderate limitations in concentration, persistence, or pace. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).

The ALJ included a limitation to simple, routine tasks in the Plaintiff's RFC, but offered no explanation for how that limitation accounted for the Plaintiff's moderate limitations. Instead, the ALJ provided a general discussion of the Plaintiff's reported symptoms and the medical opinions in the record and then concluded that the RFC "is a result of the consistency found between the allegations and evidence in the record." [T. at 113]. While the ALJ's opinion discusses the Plaintiff's symptoms and treatment notes related to concentration, persistence, or pace, the ALJ fails to explain *how*

the limitation to simple, routine tasks accounts for the Plaintiff's moderate limitations.[4]  The attempt to account for the Plaintiff's moderate limitations solely by limiting the RFC to simple, routine tasks is erroneous because the ALJ did not provide the required explanation.  See Shinaberry, 952 F.3d at 121 (quoting Mascio, 780 F.3d at 633, 637-38).  Therefore, this matter must be remanded for further consideration and findings.

### B. Evaluation of Medical Opinion Evidence

The Plaintiff also argues that the ALJ failed to provide sufficient reasons for rejecting every medical opinion in the record.  [Doc. 13 at 7].

In determining whether a claimant is disabled, an ALJ must consider every medical opinion in the record together with the other relevant evidence. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c).[5]  "Medical opinions" are statements from physicians, psychologists, and other acceptable medical sources, which reflect judgments about the nature and severity of the

---

[4] In arguing that the ALJ adequately explained the limitations in the RFC, the Commissioner inexplicably cites the portion of the ALJ's opinion analyzing the Plaintiff's mental impairments in light of the paragraph B limitations, not the mental RFC. [See Doc. 15 at 10-11 (citing T. at 105, 104-106)]. But, as the ALJ himself emphasized, "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."  [T. at 106].  As such, the cited portion upon which the Commissioner relies is inappropriate.

[5] "20 C.F.R. § 404.1527 has been replaced by 20 C.F.R. § 404.1520c as the regulation that governs the evaluation of medical opinion evidence in Social Security cases. However, Section 404.1527 still applies to all Social Security claims filed before March 27, 2017, and, thus, remains the applicable regulation in this case." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 384 n.8 (4th Cir. 2021).

13

claimant's impairment, including the claimant's symptoms, diagnoses, and prognoses, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. Id. §§ 404.1527(a)(1), 416.927(a)(1). In evaluating and weighing medical opinions, an ALJ must consider: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527(c)).

Under § 404.1527(c), the greatest weight is ordinarily given to the medical opinion of treating physicians because these professionals have actually examined the claimant—often on numerous occasions. Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017). But "[a]n ALJ may, however, credit the opinion of a non-treating, non-examining source where that opinion has sufficient indicia of 'supportability,'" and the ALJ's explanation demonstrates careful evaluation of the § 404.1527(c) factors. Woods v. Berryhill, 888 F.3d 686, 695 (4th Cir. 2018) (quoting Brown, 873 F.3d at 268). An ALJ must also demonstrate consideration of the factors contained in § 404.1527(c)(3)-(6) when determining "the weight to be given to any medical opinion, whether from a treating or nontreating

14

source." Brown, 873 F.3d at 256. To show consideration of the required factors, an ALJ must "include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" Woods, 888 F.3d at 695 (alteration in original) (quoting Monroe, 826 F.3d at 190); see also Arakas, 983 F.3d at 110-11.

Here, the ALJ references four medical opinions. [T. at 109-13]. The first opinion is from Dr. Stephen Burgess, M.D. After a January 2017 physical consultative exam, Dr. Burgess opined that the Plaintiff had mild and "intermittently more moderate[]" impairment in "bending, stooping, lifting, walking, squatting, carrying, traveling, pushing and pulling heavy objects." [Id. at 110 (internal quotation marks and citation omitted)]. The ALJ assigned Dr. Burgess' opinion "lesser weight" because, according to the ALJ, it was "not provided in occupationally relevant terms." [Id.].

The second opinion is from Dr. William McDaniel, Ph.D. [Id. at 112]. After a December 2016 mental consultative exam, Dr. McDaniel opined that "the [Plaintiff's] allegations of depressed mood and anxiety were legitimate but not alone severe enough to eliminate her from the job market." [Id.]. Dr. McDaniel noted that the Plaintiff "had some impairment in concentration[] [and] recent memory of verbal information," but that the Plaintiff's "mental

15

pace was only mildly slow." [Id.]. Dr. McDaniel further opined that the Plaintiff had "less than optimal persistence on tasks," but "understood moderately complicated instructions well." [Id.]. The ALJ assigned "partial weight" to Dr. McDaniel's opinion "to the extent [Dr. McDaniel] provided a diagnosis." But the ALJ also stated that Dr. McDaniel's opinion was not "particularly useful" for evaluating the Plaintiff's "limitations or capacity for work." [Id.].

The third opinion is from State Agency consultants Frank Virgili, M.D. and Kimberlee Terry, M.D. These consultants collectively opined that the Plaintiff "could perform work at the medium exertional level with limitations." [Id.]. The ALJ found their collective opinion "generally consistent with the medical evidence of record available to them at the time they rendered their opinion." [Id.]. But the ALJ ultimately accorded "little weight" to their collective opinion because "later evidence including the testimony of the [Plaintiff] finds the [Plaintiff] more limited than suggested and the residual functional capacity more appropriately accounts for the [Plaintiff's] current level of functioning." [Id.].

The fourth opinion is from State Agency consultants Nancy Herrera, Ph.D. and Lisa Renner, M.D. However, while the ALJ noted the existence of this collective opinion, the ALJ did not state the actual collective opinion

these consultants reached. [Id. at 112-13]. Instead, the ALJ assigned "no weight" to the unstated collective opinion as it related to "whether the [Plaintiff's] mental impairments are severe or meet the [Listings] for mental impairments" because the collective opinion was issued before the January 2017 rule changes related to the paragraph A, B, and C criteria for evaluating mental disorders. [Id. at 113]. But the ALJ assigned "partial weight" to the collective opinion as it related to the Plaintiff's mental RFC because "[t]he criteria for evaluation of a [plaintiff's] mental [RFC] have not been revised," and because the consultants were familiar with the RFC evaluation program; they had an opportunity to review a substantial portion of the medical evidence of record; and their findings were "generally consistent with the medical evidence of record." [Id.].

While the ALJ discussed all four opinions, the ALJ accorded no opinion "persuasive weight," "great weight," "greatest weight," or "controlling weight." In fact, the ALJ assigned no opinion more than "partial weight." As such, the ALJ considered no opinion to be of sufficient weight to support his assessment of the Plaintiff's RFC. Under the Regulations, the ALJ was required to consider every medical source opinion and explain any conflict between the RFC and a medical opinion in the record. SSR 96-8p, 61 Fed. Reg. at 34,478 ("The RFC assessment must always consider and address

17

medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Because the ALJ failed to properly evaluate the medical opinion evidence, the RFC is not supported by substantial evidence. Furthermore, the ALJ's failure to properly weigh and evaluate the medical opinion evidence—the most significant evidence regarding the Plaintiff's functional limitations—necessitates remand.

## VI. CONCLUSION

Because the Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ must perform a function-by-function analysis of the Plaintiff's limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). This analytical bridge should come in the form of a narrative assessment describing how the evidence supports each conclusion. SSR 96-8p, 61 Fed. Reg. at 34,478. After reviewing the required narrative assessment, the Court should not be "left to guess" about how the ALJ reaches his conclusions. Mascio, 780 F.3d at 637.

Additionally, remand is required because the ALJ failed to properly weigh and evaluate the medical opinion evidence. On remand, the ALJ must

properly weigh and evaluate all medical opinions in accordance with the Regulations. In weighing and evaluating the medical opinions, the ALJ "must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions.'" Woods, 888 F.3d at 695 (quoting Monroe, 826 F.3d at 190).

In light of the Court's decision to remand the Plaintiff's case, the Plaintiff's other assignments of error need not be addressed at this time. But the Plaintiff may raise her other assignments of error on remand.

## ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**, and the Plaintiff's Motion for Summary Judgment [Doc. 12] is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed: November 10, 2021

Martin Reidinger
Chief United States District Judge